**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-22397-RAR**

**ELIAS ISSA HABASH**,

      Petitioner,

v.

**WARDEN, KROME SERVICE**
**PROCESSING CENTER**, *et al.*,

      Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Elias Issa Habash's Petition for a Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on April 7, 2026. Petitioner alleges that he has been unlawfully committed to detention and seeks that the Court order his immediate release. *See* Pet. ¶ 1, Prayer for Relief. The Court having reviewed the Petition,[1] the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition is **DENIED** as set forth herein.

## BACKGROUND

Petitioner is a stateless Palestinian[2] who has resided in the United States since 1982, when he entered as a lawful permanent resident. Pet. ¶¶ 33, 41; Resp. at 3. In 1994, Petitioner was

---

[1] On April 10, 2026, Respondents filed a Response to Petitioner's Habeas Petition ("Response"), [ECF No. 8]. Petitioner subsequently filed a Reply, [ECF No. 15]. Further, after the Court entered an Order Requiring Sur-Reply, [ECF No. 16], Respondents submitted a Sur-Reply, [ECF No. 17]. Accordingly, the Petition is fully briefed and ripe for review.

[2] Respondents maintain that Petitioner is a native and citizen of Jordan. Resp. at 3. Petitioner however asserts that "[a]lthough Mr. Habash has been issued Jordanian, temporary two-year passports, these passports were issued as travel and identification documents for Palestinians, not as proof of Jordanian citizenship." Pet. ¶ 40. And because "[t]hese characteristics are consistent with the status of a Palestinian resident rather than a Jordanian national [] Mr. Habash's nationality is properly characterized as a stateless Palestinian." *Id.*

indicted in Ohio on charges of engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, three counts of petty theft, theft, two counts of trafficking in food stamps, and four counts of forgery.  Pet. ¶ 42; Resp. at 3.  After his petty theft charges were merged into a single theft charge, a jury convicted him of the remaining charges, with the exception of the charge of conspiracy to engage in a pattern of corrupt activity.  Pet. ¶ 42.  He then served five years of his seven-year sentence.  Pet. ¶ 42.

In June 1997, Petitioner was issued a Notice to Appear ("NTA"), charging him with removability under sections 237(a)(2)(A)(ii) and 237(a)(2)(A)(iii) of the Immigration Nationality Act ("INA").  Resp. at 4.  After completion of his criminal sentence, Petitioner was placed into detention in September 2001, and, on January 3, 2002, an Immigration Judge ordered Petitioner removed to Jordan, revoking his status as a lawful permanent resident.  Pet. ¶ 43; Resp. at 4.  On February 25, 2002, the Board of Immigration Appeals dismissed Petitioner's appeal of the Immigration Judge's decision as untimely.  Pet. ¶ 43; Resp. at 4.  On June 10, 2002, Petitioner was released from custody on an Order of Supervision ("OSUP"), and, since that date, Petitioner has complied with the conditions of his OSUP.  Pet. ¶¶ 44–45; Resp. at 4.

On November 19, 2026, Petitioner was apprehended by Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO") pursuant to his OSUP.  Pet. ¶ 46; Resp. 4.  Thereafter, ICE ERO made a custody determination and decided to hold Petitioner pending his removal,[3] and his OSUP was thereafter revoked.  Pet. ¶ 47; Resp. 4.  On December 15, 2025, Petitioner was served with Notice to Alien of File Custody Review informing him that his custody would be reviewed on February 16, 2026.  Resp. at 4–5.  ICE ERO then decided "not to release Petitioner determining that he has not demonstrated that he does not pose a danger to

---

[3]  Petitioner is currently detained at Krome North Service Processing Center.  Pet. ¶ 32; Resp. at 5.

the community, to the safety of other persons, or to property." Resp. at 5.  While Petitioner alleges that he "did not receive any interview regarding ICE's decision to revoke his OSUP and redetain him," Pet. ¶ 48, Respondents maintain that "DHS provided Petitioner notice, an informal interview, and an opportunity to address the reasons for the revocation on November 19, 2025, and subsequently on April 8, 2026."  Sur-Reply at 2.

Specifically, on November 19, 2025, ICE issued a written revocation notice to Petitioner, informing him that "his order of supervision was being revoked to enforce [his] removal order and that he will promptly be afforded an informal interview and the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that [his] removal is unlikely." *Id*. at 3 (internal quotations omitted).  That same day, he was given an informal interview that, according to Respondents, "complied with the regulation that allows revocation when ICE determines that it is 'appropriate to enforce a removal order . . . against an alien' and when ICE finds that the 'purposes of release have been served.'"  *Id*. (quoting Decl. of Officer Delgado, Ex. J, [ECF No. 8-10] ¶ 19; 8 C.F.R. § 241.4(l)(2)).  And on April 8, 2026, Petitioner was approached by the Deportation Officer assigned to his case, "was asked questions relating to 'how he felt' about his supervision being revoked [and] was then given a document memorializing his statements."  Reply at 9*; see also* Sur-Reply at 4–5 (discussing how at the second informal interview on April 8, 2026, "Respondent [] informed Petitioner about the grounds for his detention and afforded him the opportunity to respond to his detention.").

Further, on December 25, 2025 and January 5, 2026, Petitioner declined to complete the Jordanian travel document application. Resp. at 5.  After he agreed to do so on February 9, 2026, the travel document request was submitted to the Embassy of Jordan, and the application remains pending.  *Id*.

On April 7, 2026, Petitioner filed this action requesting that the Court (1) assume jurisdiction over this matter; (2) "[d]eclare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1231(a), and the *Accardi* doctrine;" (3) "[o]rder Petitioner's immediate release;" and (3) "[a]ward Petitioner costs and reasonable attorneys' fees[.]" *See* Pet., Prayer for Relief.  On April 8, 2026, Petitioner submitted an Emergency Motion for Temporary Restraining Order, [ECF No. 6], which the Court denied on April 15, 2026.  *See* [ECF No. 14].

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration."  *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).  Section 2241 authorizes federal courts to hear challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that his detention violates 8 U.S.C. § 1231(a)(6) because "there is no significant likelihood of removal in the reasonably foreseeable future."  Pet. ¶¶ 69–73.  Petitioner also maintains that his detention violates his Fifth Amendment due process rights.  Pet. ¶¶ 74–97. And Petitioner also asserts that "Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it revoked Petitioner's order"

and that Respondents violated the Administrative Procedure Act ("APA") because "[t]he revocation was also not in accordance with the INA and implementing regulations governing who may lawfully revoke an order of supervision and under what circumstances."  Pet. ¶¶ 74, 107.

Accordingly, there are three questions before the Court: (1) whether Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6) and whether that detention comports with due process; (2) whether the Court can hear Petitioner's challenge to his removal order, and, if so, whether the revocation of his OSUP comports with applicable regulations and the Constitution; and (3) whether Petitioner's detention is in violation of the APA and the *Accardi* doctrine.

## I.   Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231 and his detention comports with due process.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231 (a)(1)(A). But the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  *Id.* § 1231(a)(1)(C).

Petitioner claims that he has been detained longer than the post-removal-period detention statute permits and in violation of his due process rights.  Specifically, Petitioner argues that "8 U.S.C. § 1231(a)(6) [] authorizes post-removal-period detention only under constitutionally limited circumstances" and that "his continued detention violates [the statute] because there is no significant likelihood of removal in the reasonably foreseeable future."  Pet. ¶¶ 70–71; 74–97. Respondents, however, counter that "Petitioner here has [] been in custody . . . shorter than necessary to state a claim for unreasonable detention[.]"  Resp. at 7.  The Court agrees.

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention statute, § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. 678, 689 (2001). As this Court has explained, "[t]o avoid reading the statute as violating the Fifth Amendment Due Process Clause and to create uniform standards for evaluating challenges to post-removal-period detention, the Supreme Court held that any detention of six months or less was a 'presumptively reasonable period of detention,' and that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025) (quoting *Zadvydas*, 533 U.S. at 701).

Thus, to state a *Zadvydas* claim, the petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Here, Petitioner's *Zadvydas* claim fails because he has not been detained for more than six months, and, even if he had been, there is a significant likelihood of removal in the reasonably foreseeable future.

As a threshold matter, Petitioner's detention does not violate the implicit six-month period read into the post-removal-period detention statute under *Zadvydas*. Petitioner contends that "[t]he six-month presumptively reasonable removal period for Petitioner expired on February 1, 2026 as calculated by aggregating the period of post-removal-order detention beginning February 25, 2002, and continuing through his re-detention on November 19, 2025[.]" Pet. ¶ 72. In support of this position, Petitioner points to courts that have permitted such aggregation for purposes of

establishing the length of post-removal detention.  *See Dulovi v. Mordant*, No. 2:26-CV-00643-SPC-NPM, 2026 WL 787645, at *2 (M.D. Fla. Mar. 20, 2026) ("[Permitting] the six-month presumptively reasonable period of detention [to] reset[] each time a noncitizen is detained [is] inconsistent with *Zadvydas*.").  But courts that have considered factual circumstances similar to those here have rebuffed this contention.  For example, in *Flores-Reyes v. Assistant Field Off. Dir.*, the petitioner similarly tried to argue that his prior detention from 2000 to 2002 should be aggregated with his current detention period, beginning on October 29, 2025.  No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).  The court, in rejecting this argument, noted that given "the executive branch's immigration-related expertise and statutory authority to effectuate removals, we don't think *Zadvydas* precludes the government from detaining a criminal alien for 'even one day' just because he was detained for six months over twenty years ago."  *Id.*; *see also Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("[I]f the Court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns.  And adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals.");  *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018) (noting that *Zadvydas* is not a "'Get Out of Jail Free Card' that may be redeemed at any time just because an alien was detained too long in the past." (internal quotation omitted)).

The Court acknowledges Petitioner's concern—that by resetting the *Zadvydas* detention period, DHS would be allowed to "avoid judicial scrutiny[.]"  Pet. ¶ 63.  But "this concern has little application here [because Petitioner's] prior detention ended in 2002—over twenty years (and three different administrations) ago.  And there's no evidence that, in circumstances like ours, the government has engaged in the kind of evasive scheme" alluded to in the cases cited by Petitioner.  *Flores-Reyes,* 2026 WL 406708, at *3.  Accordingly, because Petitioner is not permitted to count

his prior detention and current detention in the aggregate, he has only been in custody for approximately five months, since November 19, 2025.

Even if Petitioner were able to satisfy the six-month period, his argument suffers from another defect—his refusal to complete his travel documents.   As stated herein, under § 1231(a)(1)(C), "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien *fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure*[.]"  8 U.S.C. § 1231(a)(1)(C) (emphasis added).  Thus, "[a petitioner's] refusal to voluntarily sign his travel document . . . [can] extend[] [the] removal period beyond the 90 days following the issuance of [a] Final Administrative Order of Removal."  *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015).  Indeed, "Courts in this Circuit have consistently held that, when a habeas petitioner 'is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS[.]'"  *Lambert v. Garland*, No. 22-23976, 2023 WL 2016841, at *3 (S.D. Fla. Feb. 15, 2023) (quoting *Vaz*, 634 F. App'x at 782).

Here, Petitioner declined to complete his Jordanian travel document application on two occasions—December 25, 2025, and January 5, 2026.  Resp. at 5.  Because "[t]he six-month period is tolled [] if the alien acts to prevent his removal[,]" *Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013), Petitioner's removal period began once his travel document request was submitted to the Embassy of Jordan.  Resp. at 8.

Lastly, even if Petitioner could establish a period of detention greater than six months, his *Zadvydas* claim would still fail because there is a significant likelihood of removal in the reasonably foreseeable future.  Specifically, Respondents "intend to remove Petitioner to Jordan and his application remains pending as of February 2026."  Resp. at 9.  Petitioner contends that

removal is not foreseeable because "over two months later, Respondents still cannot identify any acceptance by Jordan." Reply at 6. But "a delay in issuance of travel documents does not, without more, establish that a petitioner's removal will not occur in the reasonably foreseeable future[.]" *Shaikh v. Meade*, No. 21-23752, 2022 WL 844420, at *3 (S.D. Fla. Mar. 22, 2022) (quoting *Linton v. Holder*, No. 10-20145, 2010 WL 4810842, at *5 (S.D. Fla. Oct. 4, 2010), *report and recommendation adopted*, No. 10-20145-CIV, 2010 WL 4810651 (S.D. Fla. Nov. 19, 2010)).

In sum, Plaintiff has failed to state a *Zadvydas* claim because he cannot establish post-removal order detention in excess of six months. But, even if he could, there still exists a significant likelihood of removal in the reasonably foreseeable future. *Akinwale*, 287 F.3d at 1052. Accordingly, Counts I and II of the Petition warrant denial.

**II. The Court has jurisdiction over Petitioner's challenge to his detention and the revocation of his OSUP comports with due process.**

Next, Petitioner contends that Respondents' "revo[cation of] Petitioner's order of supervision without providing notice and a meaningful opportunity to respond violated procedural due process under the Fifth Amendment to the U.S. Constitution[,]" citing to this Court's *Grigorian* decision. Pet.¶ 97; Reply at 8–10. Specifically, Petitioner points to Respondent's alleged "failure to provide Petitioner . . . an informal interview[.]" Resp. at 9. Respondents counter that the Court cannot hear Petitioner's challenge to his removal order—but even if it could, the revocation of Petitioner's OSUP comports with applicable regulations and the Constitution. Resp. at 9–13.

Contrary to Respondents' contention, the Court has jurisdiction to hear Petitioner's challenge to his removal order. Respondents maintain that "the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act [] to provide that petitions for review filed in the appropriate Courts of Appeals were to be the sole

and exclusive means for judicial review of final orders of removal." Resp. at 9 (internal quotations and citations omitted). But the Eleventh Circuit has held that "[a petitioner's] challenge to his continued detention is [] distinct from a challenge to his removal order." *Linares v. Dep't of Homeland Sec.*, 529 F. App'x 983, 984 (11th Cir. 2013). Here, because "[Petitioner] is not challenging his removal order, the Real ID Act would not apply, and his claim can still be brought under § 2241. Therefore, the district court would have jurisdiction over the claim." *Id.* at 984–85 (internal citation omitted); *see also Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("[W]hile the REAL ID Act amended § 1252(b)(9) by adding an explicit bar on habeas jurisdiction over certain claims, the Act did not expand the scope of (b)(9) by making it applicable to cases other than those involving 'review of an order of removal'").

While the Court has jurisdiction to hear Petitioner's challenge to his continued detention, it does not find a procedural due process violation. Section 241.4(l)(2) permits revocation "in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2).

Petitioner contends that "Respondents cannot rely on 8 C.F.R. § 241.4(l)(2)(iii) where the alleged basis for revocation is wholly unsupported at the time of execution." Reply at 8. In support, he points to the fact that the Notice of Revocation of Release was signed on November 19, 2021, *not* November 19, 2025, and that "Respondents have not provided any valid reason for why the re-detention was executed four years later." Reply at 8. But Respondents note that this was "likely a typo" and that this fact is "supported by the Notice of Revocation's second page, which lists November 19, 2025 as the operative date on the Proof of Service and next to the

detainee's signature, as well as by the two Declarations." Sur-Reply at 3 n.2. Indeed, the Petition indicates that Petitioner was re-detained on November 19, 2025, Pet. ¶ 46, and does not raise the November 19, 2021 date issue. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994)).

The remaining challenge to the revocation of Petitioner's OSUP focuses on the adequacy of the informal interview. Upon revocation of an OSUP under § 241.4(l), an alien must be "notified of the reasons for revocation." 8 C.F.R. § 241.4(l)(1). "[A]fter his or her return to [ICE] custody" the alien must be "afforded an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id*. "If the alien is not released from custody following the informal interview," ICE must then commence "[t]he normal review process . . . with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." *Id*. § 241.4(l)(3). As this Court has explained, "the notice and interview requirement stated in § 241.4(l)(1) applies to revocation under § 241.4(l)(2)." *Grigorian v. Bondi,* No. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025).

Petitioner contends that "[t]he extremely brief interaction between the ICE officer and Petitioner at the time of his check-in and at the time he was taken into custody cannot fulfill § 241.4(l) requirements[.]" Reply at 9. Petitioner notes that he "was just recently approached by Officer Delgado on April 8, 2026 [and] was asked questions relating to 'how he felt' about his supervision being revoked. He was then given a document memorializing his statements." *Id*. However, Defendant maintains that Petitioner was given an informal interview both on November 19, 2025, and on April 8, 2026. Sur-Reply at 3, 5. Upon review of the record, the Court is

persuaded that Petitioner was provided an informal interview that comports with ICE's own regulations and procedural due process.

Petitioner's Notice of Revocation Release indicates that Petitioner "[would] promptly be afforded an informal interview and the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that [his] removal is unlikely." Ex. H, [ECF No. 8-8] at 1. Petitioner's I-213 Form, dated November 19, 2025, indicates that "Subject was advised that his Order of Supervision is being revoked, and an informal interview was conducted." Ex. A, [ECF No. 8-1] at 2. And the fact an informal interview was conducted is bolstered by affidavits submitted by Respondents. *See* Decl. of Joseph A. Delgado, Ex. J., [ECF No. 8-10] ¶ 18 ("Petitioner was informed [on November 19, 2025] that his OSUP was being revoked and an informal interview was conducted."); Second Decl. of Joseph A. Delgado, Ex. L., [ECF No. 17-11] ¶ 9 (same). Thus, the weight of the evidence runs contrary to Petitioner's "unsworn allegation" that "the informal interview was not provided to Petitioner in violation of 8 C.F.R. § 241.4(l)." *See* Sur-Reply at 3–4; Reply at 9.

Even if Petitioner is correct that the "extremely brief interaction between the ICE officer and Petitioner at the time of his check-in and at the time he was taken into custody cannot fulfill § 241.4(l)", *see* Reply at 9, the second informal interview conducted on April 8, 2026 likely renders any violation harmless. The Eleventh Circuit has held that "even where a governmental entity fails to follow its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced." *Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013); *see also Surovtsev v. Noem*, No. 1:25-CV-160-H, 2025 WL 3264479, at *9 (N.D. Tex. Oct. 31, 2025) ("[E]ven if the respondents did violate the[] procedures [requiring notice, informal interview, and

opportunity to respond and present limited evidence], any error was harmless in light of the expanded procedure that [petitioner] has received throughout this case.").

Here, both parties agree that Respondents provided Petitioner a second informal interview on April 8, 2026. Reply at 9; Sur-Reply at 5–6. At this interview, Petitioner "was asked questions relating to 'how he felt' about his supervision being revoked. He was then given a document memorializing his statements." Reply at 10; *see also* Second Decl. of Joseph A. Delgado, Ex. L., [ECF No. 17-1] ¶ 10 ("On April 08, 2026, in an abundance of caution, I conducted a second informal interview"). According to Petitioner, this is evidence that "Respondents are attempting to clear up procedural defects after the fact." Reply at 10. But Petitioner's second interview constitutes an adequate post-deprivation remedy available to cure the violation, such that Petitioner was not wholly deprived of his due process rights. *See Sharma*, 511 F. App'x at 902. The factual circumstances here are unlike those addressed by this Court in *Grigorian*, where petitioner had *never* "received a meaningful opportunity to be heard or to contest the basis for his re-detention." *Grigorian*, 2025 WL 2604573, at *9. And while "the eventual promise of a formal review [is not] enough to cure a due process violation", *see id.*, Petitioner here was actually given a second informal interview. Thus, Petitioner's reliance on *Grigorian* is inapposite.

In sum, the evidence indicates that Petitioner was provided an informal interview when he was first taken into custody on November 19, 2025. And even if he was not, his second informal interview on April 8, 2026, provided Petitioner a sufficient opportunity to be heard. Accordingly, the revocation of Petitioner's OSUP comports with due process.

### III.  Petitioner's APA and *Accardi* claims fail.

Petitioner alleges that his detention violates 5 U.S.C. § 706(2)(A) and (D) and the *Accardi* doctrine. Pet. ¶¶ 98–102, 103–114. Under § 706(2), courts are obligated to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law[,]" that is "contrary to constitutional right [or] power[,]" or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2).

As a threshold matter, habeas petitions are generally not a proper vehicle for an APA cause of action.  Indeed, "[h]abeas has traditionally been a means to secure *release* from unlawful detention, but [Petitioner seemingly] invokes the writ . . . to obtain authorization to stay in this country."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).  Indeed, a number of courts, when presented with APA claims in a similar context, have noted that a habeas petition "is the wrong vehicle for the job."  *Rodriguez Curbelo v. Noem*, No. 2:26-CV-749-KCD-NPM, 2026 WL 925638, at *5 (M.D. Fla. Apr. 6, 2026) (explaining that "[t]rying to shoehorn a freestanding APA challenge into a habeas petition simply does not work . . . [because a] habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee.  An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure.  Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint."); *Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026) (rejecting Petitioner's APA claim because "Petitioners do not specifically seek any non-habeas relief and have not paid the required filing fee for any such claim.").

More fundamentally, claims under the APA are only reviewable where there is "final agency action for which there is no other adequate remedy in a court[.]"  5 U.S.C. § 704.  But Petitioner here has not established final agency action because "detention does not constitute a final agency action[.]"  *Hernandez v. Collins*, No. 1:26-CV-289, 2026 WL 673557, at *3 (W.D. Tex. Mar. 9, 2026).  Moreover, "[Petitioner] has an adequate remedy [in a court]—the very habeas petition he filed to get through the courthouse doors."  *Rodriguez Curbelo*, 2026 WL 925638, at

*5; *see also Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring) (noting that "habeas corpus, not the APA, is the proper vehicle" because there is an "adequate remedy in a court[.]").

Even on the merits, Petitioner's APA claim must fail because, for the reasons explained herein, Petitioner's detention is not violative of the law or the Constitution. Accordingly, "[b]ecause Petitioner was [] treated as the INA [and the Constitution] requires, the government has not acted arbitrarily or capriciously." *Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026).

Finally, Petitioner cannot assert an *Accardi* claim. Petitioner claims that "Respondents' revocation of the Petitioner's Order of Supervision and decision to ignore instructions in the release notification should be set aside" because, under the *Accardi* doctrine, agencies are required to follow their own regulations. Pet. ¶¶ 99–102 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 68 (1954)). Under this doctrine, "agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (quotation omitted).

As evidence of the agency's deviation from its own regulations, Petitioner points to the fact that "Petitioner's order of supervision was not revoked by the ICE Executive Associate Director" and that "[n]o findings were provided to Petitioner that revocation was in the public interest[.]" Pet. ¶¶ 108–109. But there is no authority "that requires Respondents to publicly document every time an official delegates authority to another official" and "the relevant regulation does not mandate that the revoking official explicitly state in the Notice of Revocation of Release that the revocation was in the public interest and that the matter could not be referred to the Executive Associate Commissioner." *Barrios*, 2025 WL 2280485, at *7. Petitioner also

points to Respondents' alleged failure to conduct an informal interview. But, as discussed herein, the record indicates that informal interviews were conducted on two occasions: November 19, 2025 and April 8, 2026.

Thus, the agency does not appear to have deviated from its own regulations. And, even if it had, "the Court would not grant the extraordinary remedy [Petitioner] seeks: outright release from custody." *Bonachea v. Noem, et al.,* No. 2:26-CV-653-KCD-NPM, 2026 WL 1096846, at *5 (M.D. Fla. Apr. 23, 2026) (noting the fact that petitioner "was initially taken into custody cannot override Congress's inescapable command that he must remain detained now."); *Acosta Gonzalez v. Noem*, No. 26-60781, 2026 WL 1077836, *4 (S.D. Fla. Apr. 20, 2026) (rejecting *Accardi* claim because the Supreme Court has held that "if sufficient ground for [Petitioner's] detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner Elias Issa Habash's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2. All deadlines are **TERMINATED**, and any pending motions are **DENIED**.

3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 4th day of May, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**